UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY J. RITCHEY, as Special Administrator of the Estate of Pamela Harris, deceased, and as Special Trustee of the Irrevocable Testamentary Trust Created Pursuant to Article V of the Last Will and Testament of Pamela Kaye Harris dated June 3, 2013,<br>    Plaintiff,<br>  v.<br>METROPOLITAN LIFE INSURANCE COMPANY, INC. and COURTLAND STOKES, Individually and as the Former Executor of the Estate of Pamela Harris, Deceased,<br>    Defendants.<br>_____<br>IAN FIDLER, as Guardian Ad Litem for Z.K., a Minor,<br>    Interested Party.<br>_____<br>METROPOLITAN LIFE INSURANCE COMPANY,<br>  Crossclaim Plaintiff/Defendant,<br>  v.<br>COURTLAND STOKES,<br>  Crossclaim Defendant/Plaintiff.<br>_____ | Case No. 19 C 311<br><br>Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, the administrator of the estate of a deceased federal employee, brought this action to recover insurance proceeds that he alleges the insurer paid to the wrong party. Because the group insurance policy was issued through the Federal Employees' Group Life Insurance ("FEGLI") program, Plaintiff originally named, as Defendants, not only the insurer (Metropolitan Life Insurance Company ["MetLife"], but also the United States Office of Personnel Management ("OPM") and the Office of Federal Employees' Group Life Insurance, who removed the case from state court. Plaintiff dismissed those federal defendants voluntarily in May 2019. Because it is undisputed that diversity jurisdiction is lacking, the court ordered Plaintiff and Defendant Metropolitan Life Insurance Company ("MetLife") to file memoranda setting forth the bases for

federal jurisdiction. As discussed here, the court concludes that it lacks subject matter jurisdiction and dismisses the complaint without prejudice to proceedings in state court.

## **BACKGROUND**

In 1954, Congress enacted the Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. § 8701 *et seq.,* to "provide low-cost group life insurance to Federal employees." *Hillman v. Maretta*, 569 U.S. 483, 486 (2013) (internal quotation marks omitted). OPM administers FEGLIA. *See id.* "Pursuant to the authority granted to it by FEGLIA, OPM entered into a life insurance contract with" MetLife. *Id.* "Individual employees enrolled in the [FEGLI] Program receive coverage through this contract." *Id.* Under FEGLIA, life insurance benefits are paid upon an employee's death "in accordance with a specified 'order of precedence.'" *Id.* (quoting 5 U.S.C. § 8705(a)). Relevant here, "[t]he proceeds accrue '[f]irst, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death.'" *Hillman*, 569 U.S. at 486 (quoting 5 U.S.C. § 8705(a)). "A designation of beneficiary must be in writing, signed by the insured individual, and witnessed and signed by 2 people." 5 C.F.R. § 870.802(b).

Plaintiff Timothy J. Ritchey is the special administrator of Pamela Harris's estate. (Compl. [1] ¶ 1.) He is also the special trustee of the irrevocable trust created under Harris's June 3, 2013 Last Will and Testament for her minor granddaughter, Z.K. (*Id.* ¶ 1; *see id.* ¶¶ 14-15.) Harris worked for the United States Postal Service and obtained life insurance under FEGLIA. (*Id.* ¶ 13.) According to Plaintiff, Harris passed away in November 2013 and "was entitled to $400,000 in 'Option B' life insurance benefits under the FEGLI Program . . . upon her death." (*Id.*)[1]

Plaintiff alleges that in the June 2013 Will, Harris stated that the $400,000 Option B FEGLI proceeds should be placed in a trust for Z.K.'s benefit. (*Id.* ¶¶ 14-15; *see* June 2013 Will, Ex. A

---

[1] The Complaint does not explain what an "Option B" policy is, but neither side argues that the type of FEGLI policy is relevant to federal jurisdiction.

2

to Compl. [1-1], art. V ("(FEGLI)—Option B—Additional: $400,000—to my granddaughter [Z.K.], (as per irrevocable testamentary trust arrangement)").) Plaintiff also alleges that before Harris died, she "executed a Designation of Beneficiary Form . . . which provides that 100% of the $400,000 in Option B proceeds under the Policy are to be distributed to the 'Trustee or Successor Trustee as per my Last Will and Testament.'" (Compl. ¶ 16 (quoting FEGLI Designation of Beneficiary Form, Ex. B to Compl. [1-2]).) On April 2, 2014, MetLife distributed $400,520.82— the total Option B proceeds plus interest—to "Courtland Stokes Extr ULWT [Executor under last will and trust] [Z.K.] a minor." (Compl. ¶ 17 (quoting Check Stub, Ex. C to Compl. [1-3]).)[2] According to the June 2013 Will, Stokes, also a Defendant in this action, is Harris's nephew. (*See* June 2013 Will, art. IV.) Plaintiff alleges that "[p]ursuant to Illinois law, Stokes was not appointed as an Executor and had not [sic] legal right to receive such funds." (Compl. ¶ 18; *see also id.* ¶ 37 (alleging that as of April 2, 2014, Stokes "was not the executor of Harris's estate," "the trustee of any trust for the benefit of" Z.K., or "the custodian of any account for" Z.K.).)

Harris's estate proceeding is pending in the Circuit Court of Cook County, Illinois. (*Id.* ¶ 1.) Plaintiff alleges that in April 2015, "Stokes was appointed as Executor of Harris's Estate." (*Id.* ¶ 38.) In August 2017, Plaintiff alleges, the probate court removed Stokes as executor. (*Id.* ¶ 41.) And in December 2017, the probate court allegedly appointed Plaintiff as special trustee of Z.K.'s trust. (*Id.* ¶¶ 15, 19.) Plaintiff alleges that the probate court gave him "full and sole authority under said Trust including collecting any assets to be deposited . . . and Prosecuting any cause of action or otherwise." (*Id.* ¶ 19.) According to Plaintiff, on March 7, 2018, he filed a claim with MetLife "seeking the distribution of the $400,000 in Option B benefits

---

[2] Plaintiff alleges that the "FEGLI Defendants" made this distribution to Stokes (*id.*), but Plaintiff voluntarily dismissed OPM and the Office of Federal Employees' Group Life Insurance from this action. (*See* Order [31]; *see also* Plaintiff Jurisdictional Memorandum ("Pl. Jdx. Mem." [81] ¶ 3 (stating that Plaintiff voluntarily dismissed these entities "pursuant to MetLife's representation that it alone was responsible for the distribution of FEGLI proceeds").)

3

payable under the Policy pursuant to the Beneficiary Designation." (*Id.* ¶ 23.) His claim and subsequent appeal were denied. (*See id.* ¶¶ 24-26.) Plaintiff also alleges that he "has an absolute and unconditional right to immediate possession of the $400,520.82 received by Stokes" and that Stokes refused his demands to relinquish the money. (*Id.* ¶¶ 31-35.) Finally, Plaintiff alleges that Stokes distributed the $400,520.82 "for his own benefit, or otherwise not to [Z.K.'s] Trust." (*Id.* ¶ 40.)

Plaintiff asserts a claim against MetLife for breach of the FEGLI insurance policy. He alleges that MetLife breached the policy by failing to (1) distribute the proceeds to the person identified in the beneficiary designation and (2) conduct a reasonable investigation before distributing the funds to Stokes. (*Id.* ¶¶ 27-28.) Plaintiff asserts claims against Stokes for conversion and, in the alternative, breach of fiduciary duty. (*Id.* ¶¶ 31-43.) For each claim, Plaintiff seeks (among other things) compensatory damages in the amount of $400,520.82.[3]

## DISCUSSION

"[F]ederal courts have an independent obligation at each stage of the proceedings to ensure that [they] have subject matter jurisdiction over the dispute." *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013) (internal quotation marks omitted). This case does not satisfy the requirements for diversity jurisdiction. Plaintiff and MetLife argue that the court has federal question jurisdiction over the claim for breach of the FEGLI insurance policy and supplemental jurisdiction over the state-law claims for conversion and breach of fiduciary duty.

---

[3] MetLife filed crossclaims against Stokes for recovery of overpayment, unjust enrichment, negligent misrepresentation, and fraud. (*See* MetLife Ans. & Crossclaims [22], 14-19.) Stokes filed crossclaims for negligence against MetLife and two third parties: an attorney, Jonathan W. Coles, and Bank of America. (*See* Stokes Am. Ans. & Counterclaims & Crossclaims [37-1], 18-22.) Later, Stokes filed amended crossclaims against MetLife for breach of the FEGLI policy and breach of fiduciary duty. (*See* Stokes Second Am. Crossclaim Compl. [54-1] ¶¶ 45-65.) On November 6, 2019, the court granted MetLife's motion to dismiss Stokes's crossclaim for negligence. (*See* Order [61].) The court dismissed Stokes's other crossclaims against MetLife on July 6, 2020, after Stokes failed to oppose MetLife's motions to dismiss. (*See* Order [85].) It appears that Stokes never served process on Coles or Bank of America, so the court concludes that Stokes has abandoned the crossclaims against them.

(*See* Compl. ¶¶ 8-9 (citing 28 U.S.C. § 1331; 28 U.S.C. § 1367); Pl. Jdx. Mem. ¶ 5; Metlife Jurisdictional Memorandum ("MetLife Jdx. Mem.") [84] ¶¶ 1, 13.)

Under 28 U.S.C. § 1331, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A case may arise under federal law in two ways. *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015). The first is "when federal law creates the cause of action asserted." *Id.* (quoting *Gunn v. Minton*, 568 U.S. 251, 257 (2013). This category "accounts for the vast bulk of suits that arise under federal law." *Gunn*, 568 U.S. at 257. Second, a state-law claim may arise under federal law if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Evergreen*, 776 F.3d at 466 (quoting *Gunn*, 568 U.S. at 258). The second path to federal jurisdiction is "rarely" successful. *Evergreen*, 776 F.3d at 466.

FEGLIA provides that "[t]he district courts of the United States have original jurisdiction, concurrent with the United States Court of Federal Claims, of a civil action or claim *against the United States* founded on this chapter." 5 U.S.C. § 8715 (emphasis added). Because Plaintiff is no longer asserting claims against the United States, FEGLIA does not create the causes of action in this case. *See, e.g.*, *Miller v. Bruenger*, 949 F.3d 986, 991-92 (6th Cir. 2020) (stating that FEGLIA does not create an express or implied right of action for a claim between private parties and that there would be federal jurisdiction over such a claim only if it presented a substantial question of federal law); *Metro. Life Ins. Co. v. Thompson*, No. 17-CV-06238 (ENV) (RER), 2018 WL 7324383, at *3 (E.D.N.Y. Dec. 14, 2018) (stating that because FEGLIA "does not create a private right of action," federal law "does not supply the cause of action"), *report and recommendation adopted*, No. 17-CV-6238 (ENV) (RER), 2019 WL 634651 (E.D.N.Y. Feb. 14, 2019); *Spellers v. Metro. Life Ins. Co.*, No. 15 C 1556 (N.D. Ill. Mar. 30, 2015), slip op. at 9-10 (remanding for lack of jurisdiction) (emphasizing that FEGLIA confers federal jurisdiction only for civil actions or claims against the United States).

5

MetLife contends that the court had original jurisdiction over the FEGLIA claims against the federal government Defendants and that although those Defendants have been dismissed, the court may exercise supplemental jurisdiction over the remaining claims. (*See* Metlife Jdx. Mem. ¶ 5 (citing 28 U.S.C. § 1367).) Section 1367 and the cases cite by MetLife, however, state only that "[a] district court's decision whether to exercise" supplemental jurisdiction "after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). The court declines to exercise supplemental jurisdiction and instead considers whether this is a rare case in which a state-law claim necessarily presents substantial issues of federal law.

Both sides argue that Plaintiff's claim for breach of the FEGLI insurance policy fits the bill, but the court disagrees. As MetLife recognizes, Plaintiff claims that it breached the policy by failing to "pay[] according to the decedent's beneficiary designation and failing to conduct a reasonable investigation before distributing the benefits to" Stokes. (MetLife Jdx. Mem. ¶ 13.) MetLife contends that these allegations "implicate substantial predominating federal questions" because MetLife's "duties and responsibilities under FEGLIA are established in the FEGLI Program Contract with OPM." (*Id.*) It adds that federal law dictates how to interpret the terms of a FEGLI contract and that "[a]ny contrary state law interpretation is preempted." (*Id.* (citing 48 C.F.R. § 2101.102)); *see also* 5 U.S.C. § 8709(d)(1) (FEGLIA preemption clause). But MetLife fails to identify contractual terms that the court would need to interpret to resolve Plaintiff's breach of contract claim. It also fails to identify a contrary state law or regulation that would raise a preemption issue.

FEGLIA does govern the "order of precedence" by which benefits are paid and gives priority to the properly designated beneficiary. 5 U.S.C. § 8705(a). Nothing in the Complaint, however, indicates that the order of precedence or the method of designation—such as the validity of the signature or compliance with the witness requirement—are at issue. Rather, the dispute centers on whether Stokes could properly receive the funds on behalf of Z.K. (the

6

designated beneficiary) as an executor, trustee, or custodian. Plaintiff alleges, and MetLife does not dispute, that Stokes's eligibility to serve in those roles is a question of Illinois law. (*See, e.g.*, Compl. ¶¶ 18, 41.) MetLife's alleged negligence in failing to conduct a reasonable investigation is also a question of state law. Plaintiff's breach of contract claim, therefore, does not "necessarily" raise a disputed issue of federal law. *Evergreen*, 776 F.3d at 466.

Analogous decisions by federal courts support this conclusion. In *Bruenger*, for example, the court determined that where a claim for FEGLI proceeds would "[a]t heart" be an action to enforce a divorce property settlement agreement that was governed by state law, it would not necessarily raise a federal issue. 949 F.3d at 992. In *Parker v. Metropolitan Life Insurance Co.*, 264 F. Supp. 2d 364, 366 (D.S.C. 2003), a case similar to this one, the court determined that although FEGLIA's order of precedence would dictate the proper beneficiary, the plaintiff's tort claims did not necessarily implicate federal law; "[t]he real issues" were whether MetLife had negligently paid a third-party who claimed to be the proper beneficiary and whether that third-party had "fraudulently obtained the FEGLI proceeds." *See also, e.g.*, *Mall v. Atl. Fin. Fed.*, 127 F.R.D. 107, 109 (W.D. Pa. 1989) (plaintiff's claim against MetLife for breach of FEGLI insurance policy did not arise under federal law because it did "not call into question [the minor's] entitlement to the proceeds; it call[ed] into question [MetLife's] conduct which" allegedly "allowed [the minor's guardian] to dissipate the funds" to the minor's detriment); *Victoria v. Metro. Life Ins.*, No. 09-CV-04179 CRB, 2010 WL 583946, at *2 (N.D. Cal. Feb. 16, 2010) (where the plaintiff did not challenge FEGLIA's one-year time bar for claiming benefits, but rather MetLife's alleged failure to notify her that she was a beneficiary, the claim for breach of covenant of good faith and fair dealing did not necessarily present an issue of federal law); *cf. Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1034, 1036 (7th Cir. 2014) (noting that in *Empire*, 547 U.S. at 701, the Supreme Court "held that a suit to recoup health benefits paid under a plan for federal employees arose under state law, even though the plan was a federal creation," and determining that "school

districts' claim to the economic benefit of" certain federal subsidies was likewise an ownership dispute that "belong[ed] in state court").[4]

Even assuming Plaintiff's breach of contract claim necessarily raises federal issues, they would not be substantial. *See Evergreen*, 776 F.3d at 466. "The substantiality inquiry" looks "to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. An issue is important to the federal system when its resolution "would be controlling in numerous other cases." *Id.* at 262 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)). Accordingly, pure questions of law such as the proper interpretation of a federal tax provision (*see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)) or the constitutionality of a federal statute (*see Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921)) may be so substantial that they confer federal jurisdiction. *See Gunn*, 568 U.S. at 260-61. By contrast, where a claim is "fact-bound and situation-specific," it is unlikely to create issues that confer federal jurisdiction. *Gunn*, 568 U.S. at 263 (quoting *Empire*, 547 U.S. at 701).

Again, there appears to be no dispute that Z.K. is the proper beneficiary or that Harris completed the designation of beneficiary form in compliance with FEGLIA. Nothing in the Complaint, therefore, indicates that a court would need to apply FEGLIA's provisions concerning the order of precedence or the methods for designating a beneficiary in order to resolve Plaintiff's breach of contract claim. Although it is conceivable that a different FEGLIA issue could arise, that possibility does not satisfy the substantiality requirement. *See, e.g.*, *Empire*, 547 U.S. at 701 ("[I]t takes more than a federal element 'to open the 'arising under' door.'" (quoting *Grable*, 545 U.S.

---

[4] MetLife contends that Stokes's cross claims raise issues of federal law (*see* MetLife Jdx. Mem. ¶ 14), but those claims have been dismissed. MetLife also contends that its "contingent claims against Stokes" present issues of federal law. (*Id.* (arguing that the claims "seek to enforce the FEGLI Program Contract Provision for Erroneous Payments establishing MetLife's contractual obligations to OPM and impacting the value of the FEGLI letter of credit account").) MetLife does not elaborate on this argument. In any event, its crossclaims against Stokes depend on whether Stokes had a right under Illinois law to receive the FEGLI proceeds on Z.K.'s behalf. (*See* MetLife Ans. & Cross Claims at 14-19.)

at 313)); *Bruenger*, 949 F.3d at 992 ("[E]ven if FEGLIA . . . would arise . . . federal jurisdiction is not established simply because a state court may have to entertain a federal issue"); *Spellers*, slip. op. at 7 ("A case calling for the straightforward application of a regulation is not important to the federal system."). Plaintiff's Complaint suggests that if a FEGLIA issue arises, it would depend on case-specific facts, including whether Stokes was an executor, custodian, or trustee under Illinois law. A court's resolution of such an issue would not affect "a broad range of parties," and "the United States's interest in how a former employee's life insurance proceeds are distributed would not be described as significant, when measured against the weighty federal issues the government faces on a regular basis." *Bruenger*, 949 F.3d at 993-94. Relatedly, a federal court could not adjudicate Plaintiff's breach of contract claim without "disrupting the federal-state balance approved by Congress." *Evergreen*, 776 F.3d at 466 (quoting *Gunn*, 568 U.S. at 258); *see, e.g.*, *Bruenger*, 949 F.3d at 994 ("[O]pen[ing] the federal courtroom doors to any dispute over the distribution of a federal employee's life insurance proceeds" could "distort the division of judicial labor assumed by Congress under" 28 U.S.C. § 1331 (internal quotation marks omitted)).

      MetLife argues that this case is analogous to *Evergreen*, where the Seventh Circuit determined that federal question jurisdiction existed for state-law breach of contract claims. (MetLife Jdx. Mem. ¶ 17 (citing *Evergreen*, 776 F.3d at 467-68)). MetLife correctly states that the housing assistance payment contracts in *Evergreen* had to be approved by a federal agency and that their terms were "administered pursuant to federal laws and regulations." *Evergreen*, 776 F.3d at 468. It omits, however, that "the only disputed issues involve[d] the proper interpretation of" a federal statute and a federal agency's "implementing guidance." *Id.* at 467. Here, neither side argues that Plaintiff's breach of contract claim will turn on a disputed interpretation of a term in the FEGLI insurance policy or that resolving a FEGLIA issue in this case would "substantially influence the scope and success of" the Program. *Id.* at 468.

      *Hightower v. Kirksey*, 157 F.3d 528 (7th Cir. 1998), and *Metropolitan Life Insurance Co. v. Christ*, 979 F.2d 575 (7th Cir. 1992), cited by MetLife, also fail to persuade the court that there

9

is federal question jurisdiction. In both cases, the Seventh Circuit adjudicated FEGLIA disputes between private parties, and diversity jurisdiction appears to have been lacking. *See Hightower*, 157 F.3d at 528-29; *Christ*, 979 F.2d at 576. But the courts in *Hightower* and *Christ* did not discuss the basis for federal jurisdiction and both cases predate *Grable* and *Gunn*, which now guide the Seventh Circuit's analysis of whether a state-law claim arises under federal law. *See, e.g.*, *Evergreen*, 776 F.3d at 465-66. *Hightower* and *Christ* are also distinguishable because the parties' claims depended on disputed federal issues whose resolution would be controlling in other cases. *See Hightower*, 157 F.3d at 529 (parties agreed that the "case was limited to the issue of whether, in order for the insured's naming of [the defendant] as his beneficiary to become legitimate, an actual signature of the insured was required on the 'designation of beneficiary' form"); *Christ*, 979 F.2d at 576 (identifying the proper beneficiary required determining whether FEGLIA preempted a state divorce decree that directed a policyholder to designate certain beneficiaries). The *Hillman* Court's statement that "any departure from the beneficiary designation is managed within, not outside, the federal system" is also inapposite. 569 U.S. at 496-97 (holding that FEGLIA preempted a state law that allocated FEGLIA proceeds to someone other than the named beneficiary); MetLife Jdx. Mem. ¶¶ 10, 18 (citing same). Again, the parties here do not dispute that Z.K. is the proper beneficiary; their disagreement centers on who has authority under Illinois law to serve as trustee for Z.K.

The cases Plaintiff relies on are equally unpersuasive. *Metropolitan Life Insurance Co. v. Johnson*, No. 11-CV-8210, 2012 WL 2192283 (N.D. Ill. June 13, 2012) ("*Johnson I*"), concerned a private dispute about distribution of FEGLIA proceeds, but unlike here, the court had diversity jurisdiction. *See id.* at \*1-2. And although the court stated that FEGLIA Section 8715 conferred federal question jurisdiction, it did not otherwise explain its conclusion where the plaintiff was not seeking recovery against the United States. *See id.* at \*2; *Metro. Life Ins. Co. v. Johnson*, No. 11-CV-8210, 2013 WL 317051, at \*1 (N.D. Ill. Jan. 24, 2013) (stating that in *Johnson I*, the court had federal jurisdiction "because the action was governed by" FEGLIA); *see also Eckhardt v.*

10

*Metro Life Ins. Co.,* No. 13-CV-0654-MJR-DGW, 2013 WL 12080228, at *1 (S.D. Ill. Dec. 17, 2013) (stating, without further explanation, that the court had federal question jurisdiction over a private dispute about FEGLIA benefits because the plaintiff's claim was "governed by" FEGLIA). *Johnson* and *Eckhardt* are not binding authority, and respectfully, the court finds the discussions about federal jurisdiction in *Bruenger,* 949 F.3d at 990-94, *Spellers,* slip. op. at 5-9, and other cases referenced above more persuasive. For the reasons already explained, the court concludes that it lacks federal question jurisdiction over Plaintiff's breach of contract claim.

## CONCLUSION

For the foregoing reasons, subject matter jurisdiction is lacking in this case. Accordingly, the case is dismissed without prejudice to refiling in state court.

ENTER:

Dated: August 5, 2020

_____
REBECCA R. PALLMEYER
United States District Judge

11